IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MATTHEW SOUTHALL BROWN, III, : : : | |
| Plaintiff, : : | |
| v. : : | CIVIL ACTION NO. 1:05-CV-1454-JOF |
| CHATTAHOOCHEE TECHNICAL COLLEGE and CALVIN EDDINS, : : : | |
| Defendants. : | |

## OPINION AND ORDER

This matter is before the court on Defendants' motion for summary judgment [19].

**I.  Background**

    **A.  Procedural History and Facts**

On June 2, 2005, Plaintiff, Matthew Southall Brown, III, filed suit alleging equal protection violations, violations of Title VI of the Civil Rights Act of 1964, and intentional infliction of emotional distress against Defendants, Chattahoochee Technical College (hereinafter "Defendant CTC") and Calvin Eddins (hereinafter "Defendant Eddins").  On February 8, 2006, Defendants filed a motion for summary judgment.

Plaintiff, while employed as a firefighter with the Marietta Fire Department, enrolled in the Paramedic Technology Program offered by Defendant CTC.  Defendant Eddins, a fire

lieutenant for the City of Marietta, was the primary instructor of the program. The students at Defendant CTC were organized into classes, of whom twelve remained to the end of the course. Plaintiff was the only African-American student at the end of the class. The remaining members of the class were white.

Prior to starting the course, Plaintiff and Defendant Eddins had a conversation regarding the Georgia state flag. Defendant Eddins expressed his belief that he preferred the old state flag which had the Confederate flag upon it, a belief he expressed again during his deposition.

The State Office of Emergency Medical Services determines the minimum requirements for a paramedic. An individual must (1) complete a fifty-contact-hour anatomy and physiology class, (2) show competency in English and math, (3) take a computer class, and (4) be at least eighteen years of age. To obtain state certification, an individual must: (1) Meet the office of Emergency Medical Services standards, (2) take and pass the National Registry of Emergency Medical Technicians (hereinfter "NREMT") paramedic examination, and (3) send the appropriate documentation with a registration fee to the state office.

The Department of Technical and Adult Education sets standards for its programs, including that of Defendant CTC for obtaining a diploma. This diploma differs from the requirements of the state certification in that a student must take an English and math course.

However, a diploma from the school is not required to take the NREMT paramedic examination. Few participants in the Paramedic Technology Program receive diplomas from Defendant CTC

Plaintiff and Defendant Eddins had several discussions about his needing to take the computer class or test out of this requirement. On the final day of the class, Defendant Eddins removed Plaintiff from the class and had a heated discussion with Plaintiff concerning the computer course. At first, Defendant Eddins was not going to allow the Plaintiff even to sit for the examination. After some conversation, Defendant Eddins changed his mind and stated that he would let the Plaintiff take the NREMT examination.

On December 20, 2004, Plaintiff and his classmates sat for the NREMT paramedic examination. Plaintiff did not take the computer course prior to taking the NREMT paramedic examination. After the examination, Defendant Eddins faxed a list to the NREMT containing the names of eleven students who had completed the course requirements. Plaintiff was the only student in the class whose name was not included in the fax. Upon receiving the fax, the NREMT graded the eleven students' examinations. Of the eleven students whose tests were graded, one white female had not completed the course. At the last class, Defendant Eddins informed the female student that she needed to take the class. However, she informed him that she was enrolled in the class. Defendant Eddins relied upon this representation. Defendant Eddins learned in late January that this student had not completed the computer course. He did not inform the NREMT of this discovery.

3

**B.    Contentions**

Defendant Chattahoochee Technical College argues it is not an entity subject to suit under section 1983. Defendants further argue that they are entitled to summary judgment on Plaintiff's Title VI claim as Plaintiff was not qualified to have his test graded and he was not treated differently than similarly-situated students outside his protected class. Finally, Defendants argue that Plaintiff's state law intentional infliction of emotional distress claim is barred by the Georgia Tort Claims Act.

Plaintiff contends that Defendants violated his equal protection rights under section 1983 because they treated Plaintiff differently than similarly-situated white students. He further avers that Defendants intentionally discriminated against him in violation of Title VI because similarly-situated students outside his protected class were allowed to have their NREMT tests graded while his test remained ungraded. Finally, he argues that Defendants are liable for intentional infliction of emotional distress for the same conduct.

**II.    Discussion**

4

### A.     Title VI claim and section 1983 claim

Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d, *et seq.*, provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." *Id.* "[P]rivate individuals may sue to enforce § 601 of Title VI and obtain both damages and injunctive relief." *See Alexander v. Sandoval*, 532 U.S. 275, 280 (2001). Section 601 bars only intentional discrimination. *Id.* Numerous courts have applied the burden-shifting analysis of Title VII claims to claims brought under § 601. *See, e.g., Freeman v. Fahey*, 374 F.3d 663, 666 (8th Cir. 2004); *Bryant v. Independent School District No. I-38*, 334 F.3d 928, 930 (10th Cir. 2003); *Peters v. Jenney*, 327 F.3d 307 (4th Cir. 2003) (applying Title VII jurisprudence to Title VI retaliation claim); *Quarles v. Oxford Mun. Separate Sch. Dist.*, 868 F.2d 750, 754 n.3 (5th Cir. 1989) (indicating *McDonnell-Douglas* analysis would apply to Title VI claim).

A plaintiff may establish a Title VII claim through direct or indirect evidence. *Hinson v. Clinch County, Georgia Bd. Of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000). Direct evidence is that which shows an employer's discriminatory intent "without any inference or presumption." *Id.* (citing *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir.1998)). As Plaintiff has offered no direct evidence which shows Defendants' discriminatory intent, the court will address any circumstantial evidence of discriminatory intent on the part of the Defendants.

5

In the context of discrimination in employment, a plaintiff must first establish a prima facie case. To establish a prima facie case of disparate treatment, a plaintiff "must show: (1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated male employees more favorably; and (4) she was qualified to do the job." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)." While this court has not adapted the *McDonnell-Douglas* prima facie test to the education discrimination context, that which Plaintiff is seeking is comparable to the employment context. Therefore, the court finds that for Plaintiff to make a prima facie case of disparate treatment, as he alleges here, he must show: (1) That he is a member of a protected class; (2) that Defendant Eddins, by leaving his name off the fax which resulted in his test not being graded, subjected Plaintiff to an adverse action; (3) that Defendants treated similarly-situated students outside the protected class more favorably; and (4) that he was qualified to take the NREMT test and have his scores graded.

Once a prima facie case is established, it raises a presumption that a defendant discriminated against the plaintiff, and the Defendant then has the burden to articulate a legitimate, non-discriminatory reason for the adverse action. *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). The defendant's burden for articulating a non-discriminatory reason "is exceedingly light," merely a "burden of production not proof." *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004) (internal citations and quotations omitted).

6

After the defendant has proffered a legitimate non-discriminatory reason for the adverse action, "the plaintiff must then come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision," but rather a pretext. *Id.* (internal citations and quotations omitted).

As evidence of such a pretext, the plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Id.* (internal citations and quotations omitted). If the plaintiff fails to provide sufficient evidence, creating "a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." *Id.* (internal citations and quotations omitted). "[A] reason cannot be proved to be a pretext *for discrimination* unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Scweers v. Best Buy, Inc.*, 132 Fed. Appx. 322, 325 (11th Cir. 2005) (Table) (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515 (1993)).

The court finds that Plaintiff has satisfied the first two requirements for making a prima facie case of intentional discrimination in violation of Title VI. However, the court does not find that Plaintiff has shown that he was qualified to have his NREMT test graded.

7

Plaintiff contends that "the NREMT will not score an examination until noticed by an applicant's school that all of NREMT's minimum course requirements have been met." The court reviewed the evidence Plaintiff contends supports its proposition and found that Defendant Eddins did not make such an assertion. Rather, he states that the NREMT will not grade an examination until it receives notice from the applicant's school that the applicant has received a course completion certificate. Eddins Depo. at 51-52, 57. In order to obtain a course completion certificate, Defendant Eddins states that a student must complete a mandatory computer course. *Id.* at 57. As Plaintiff has not shown that he was qualified to have his test graded, he has not made a prima facie showing of Defendants' intentional discrimination for failing to issue a course completion notice to the NREMT required to have his exam scores graded.

Further, with regard to the two white students who did not take the English course, Plaintiff has not made a sufficient showing that these students were similarly situated necessary to establish a prima facie case of discrimination. The NREMT will not grade an applicant's exam until it receives from the instructor a course completion certificate. Eddins Depo. at 51-52. Defendant Eddins states that the computer course was required to receive a course completion certificate while the English course was not. *Id.* at 32, 48, 57. Rather, the English course was required to receive a diploma from Defendant CTC. *Id.* 48. As such, a student who completed all course requirement save the English or math course could receive a course completion certificate and have their examinations graded by the NREMT.

8

Therefore, the students who failed to take the English course but still had their examinations graded were not similarly situated to Plaintiff, who failed to take a course required for a course completion certificate.

Assuming *arguendo*, that Plaintiff were qualified to have his NREMT test graded, one student would be similarly situated, the white female student who also failed to complete the course yet received a course completion certificate. With regard to the white female student who did not complete the computer course, Defendant Eddins in his deposition, offered a non-discriminatory reason for the disparate treatment. He states that he relied on the students' representations in determining who had enrolled in the course. Eddins Depo. at 56. He stated that at the end of the course he thought that the student had completed the course, and for that reason he included her name on the list of people who had achieved a course completion certificate. *Id.* He testified that he did not become aware that the white female in question had not completed the course until "sometime toward the end of January." Upon calling the student, Defendant Eddins discovered that he was mistaken in his belief.

Plaintiff contends that Defendant's explanation makes no sense because Defendants always had the power to check the white female's records at any time to determine whether she had enrolled and completed the course. By simply stating that Defendant Eddins had the power to check the subject female's grades, Plaintiff has not made the requisite showing that

9

the stated reasons for the different treatment is a pretext.[1] Therefore, even had Plaintiff made a prima facie case of discrimination, Defendants are entitled to summary judgment on Plaintiff's Title VI discrimination claim, as they have provided a non-discriminatory and non-pretextual reason for the disparate treatment.

For all of the reasons stated above, the court GRANTS Defendants' motion for summary judgment with regard to Plaintiff's Title VI claim of intentional discrimination.

The court also finds that as Plaintiff cannot prove intentional discrimination under Title VI, applying the Title VII burden-shifting framework, Defendants are also entitled to summary judgment on Plaintiff's section 1983 claim. *Mitchell v. Pope*, 2006 WL 1976011, * 1 (11th Cir. July 14, 2006) (citing *Hardin v. Stinchcomb*, 691 F.2d 1364, 1369 n.16 (11th Cir. 1982) ("when § 1983 used as a parallel remedy for Title VII violation, elements of the two causes of action are the same."). Therefore, the court GRANTS Defendants' motion for summary judgment with regard to Plaintiff's section 1983 claim.

## B.   Intentional Infliction of Emotional Distress

Plaintiff asserts a tort claim of intentional infliction of emotional distress against Defendant CTC and Defendant Eddins. With Defendant Eddins, the Georgia Code provides: "A state officer or employee who commits a tort while acting within the scope of his or her

---

[1] Plaintiff contends that Defendant Eddins' preference for the old Georgia State Flag is evidence that Defendant Eddins holds beliefs which are hostile to African-Americans. The court finds such contentions insufficient to establish direct evidence of discrimination or to establish that Defendants' stated reasons for disparate treatment were pretexual.

official duties or employment is not subject to lawsuit or liability therefor." O.C.G.A. § 50-21-25(a). Plaintiff has not alleged that Defendant Eddins acted outside the scope of his official duties. Accordingly, Plaintiff's tort claim against Defendant Eddins is denied.

Because Plaintiff has not followed the proper procedures for bringing suit against the State, Defendant CTC also is entitled to summary judgment. A plaintiff must give the State notice of a tort claim before filing a lawsuit. *Id.*, § 50-21-26. The burden is on the plaintiff to show he provided such notice. *Id.*, § 50-21-26(a)(4). Plaintiff has introduced no evidence of satisfying this requirement. Accordingly, his tort claim against Defendant CTC is denied. For these reasons, the court GRANTS Defendants' motion for summary judgment on Plaintiff's state law intentional infliction of emotional distress claim.

AO 72A
(Rev.8/82)

### III. Conclusions

The court GRANTS Defendants' motion for summary judgment [19].


**IT IS SO ORDERED** this 5th day of September 2006.


                                                     s/ J. Owen Forrester
                                                    J. OWEN FORRESTER
                                     SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)